SIBLEY *v.* MUTUAL RESERVE FUND LIFE ASSOCIATION.

1. Under the contract declared upon, the insurance company did not obligate itself unconditionally to open the States of Florida and Mississippi to the plaintiff for his operations as general agent of the company, nor was there any guarantee that such States were open to him at the time the contract was made.   The plaintiff having failed to secure business to the amount of $50,000.00 per month in the State of Georgia, the company had a right to discontinue his services and terminate the contract.
2. An amendment to the declaration which was offered at the time of hearing a demurrer to the declaration, and disallowed by the court, is no part of the record, and can only come to the Supreme Court by being set out in the bill of exceptions or annexed to the same as an exhibit duly authenticated.

October 19, 1891.

Contracts.   Practice.   Amendment.   Before Judge VAN EPPS.   City court of Atlanta.   December term, 1890.

Reported in the decision..

FULTON COLVILLE, for plaintiff.

H. H. GORDON and J. H. LUMPKIN, for defendant.

BLECKLEY, Chief Justice.

These parties, in June, 1888, entered into a written contract whereby the defendant appointed the plaintiff general agent of the association, with the title of Manager of the Georgia Department, for the purpose of procuring and effecting applications for membership satisfactory to the association, and for collecting the admission fees on applications, and for securing agents, to be appointed by the association, for the purpose of procuring applications. One of the stipulations was as follows:

"THIRD. The district in which said Manager shall have the right to work and to appoint General Agents for the purpose of procuring applications as aforesaid shall embrace the State of Georgia and such healthy portions of Mississippi and Florida as may be acceptable to the Association. Said right shall continue so long as the new business secured by said Manager and his agents from said district shall in each and every month be not less than Fifty Thousand Dollars commencing from August 1st, 1888. This contract is made subject to the condition that the Association is legally authorized to transact business in said district assigned, but should said Association not now have such authority, or should said authority be at any time hereafter revoked, then this contract shall be null and void as to so much of said district as it may be prohibited from transacting business in, except upon business already done therein by said Manager, or agents appointed by him, if any."

Another stipulation was in these words: "Subject to all the provisions herein contained, this contract shall continue in force for the term of ten years." The plaintiff served seven months, and in that time the amount of business procured by him and his agents was $194,000. The company discontinued his services and

terminated the contract.    He brought his action for damages, and the declaration being demurred to, the demurrer was sustained and the action dismissed.    The plaintiff contends that, notwithstanding he failed to obtain $50,000 new business in each and every month, he was wrongfully discharged, because his failure, as he contends, is to be attributed to his exclusion from the States of Mississippi and Florida.    He contends that the language of the contract imports that the company represented and stipulated that it was entitled to transact business in all three of the States at the time the contract was made, or if not, that it obligated itself unconditionally to open up the States of Florida and Mississippi, which it failed to do.    We agree with the court below in the opinion that this is not a correct interpretation of the contract.    The language, "This contract is made subject to the condition that the Association is legally authorized to transact business in said district assigned," introduces a condition for the benefit of both parties, and not exclusively for the benefit of the plaintiff.    It is immediately added : "But should said Association not now have such authority, or should said authority be at any time hereafter revoked, then this contract shall be null and void as to so much of said district as it may be prohibited from transacting business in, except upon business already done therein by said Manager, or agents appointed by him, if any." Here is no undertaking by the company to procure any authority which it did not already possess, and it did not guarantee or warrant that it possessed any whatever.    It left that question open, and the contract was to be void or not void according as there might or might not be authority to transact business in the district.    If there was authority for a part of the district only, the contract was to be good for that part and void as to the rest.    The effect was that the district would

be narrowed down to fit the authority, and not that the authority would be widened to fit the district. Nor do we think that the plaintiff was relieved from raising the $50,000 per month in business because the district open to him proved to be the State of Georgia only. It appears from the declaration that the annual commissions which the company would realize on business was only three dollars per thousand dollars, and at that rate it is fair to presume that nothing less than $50,000 in business per month would justify the company in maintaining a separate department and employing a general agent or manager to attend to it. If the *Georgia Department* failed to yield an income of $1,800 a year, there would seem to be no great inducement to keep the Georgia Department on foot. Besides, the fruits to the extent of $50,000 per month in business were to be realized at once, commencing with the 1st of August, or else the right to go on was not to be absolute. Furthermore, as it was not the whole of Mississippi and Florida or either of them, but only such healthy portions thereof as might be acceptable to the company, that would belong to the district in any event, there is no way to apportion the $50,000 per month so as to ascertain how much of it should be discounted by reason of the district being confined to Georgia alone. Is it possible to tell how much the plaintiff was to realize per month in business, in order to entitle him to go on for ten years, unless it was the $50,000 as a minimum? The parties having failed to stipulate expressly on this subject, or to furnish by their agreement any basis for reducing the $50,000 to any other sum, we can have no hesitation in holding that they did not contemplate any reduction of it whatever. The plaintiff after trying for seven months failed by almost one half to come up to the stipulated amount, and so far from obtaining that amount in each and every month, it does not appear

that he obtained it for even one month.   It seems to us there can be no doubt that the company had the right to discontinue his services and terminate the contract.

2. The bill of exceptions states that an amendment to the declaration was offered at the time of the hearing of the demurrer and disallowed by the court.   That amendment did not become a part of the record so as to be authenticated by the clerk's certificate, and its contents are not set out in the bill of exceptions, nor is any copy of it annexed to the bill as an exhibit, or otherwise duly authenticated by the presiding judge.   For this reason, although the record as sent up by the clerk. is accompanied by what purports to be an amendment without any mark of filing upon it, we do not consider it as properly before us.   We have looked at it, however, and can see no reason to think that it was improperly disallowed.                    *Judgment affirmed.*